UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SAMUEL P. COPELAND, D.O.,

    Defendant.
_____/

Case No. 1:21-cv-909-PLM-SJB

HON. PAUL L. MALONEY
U.S. District Judge

HON. SALLY J. BERENS
U.S. Magistrate Judge

## CONSENT DECREE

Plaintiff, the United States of America (the "United States"), by its counsel, Andrew B. Birge, United States Attorney for the Western District of Michigan, and Andrew J. Hull and Ryan D. Cobb, Assistant United States Attorneys, has filed a Complaint seeking an injunction and civil penalties (the "Complaint"), alleging that Defendant Samuel P. Copeland, D.O. ("Defendant," and together with the United States, the "Parties"), has violated the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.* (the "CSA"), that the United States is entitled to injunctive relief against Defendant, and that the Defendant is liable to the United States for civil monetary penalties for his CSA violations. The Parties stipulate to the entry of this Consent Decree to resolve the disputed matters the United States asserts in the Complaint, with the following terms and provisions.

### The Parties

1.     Plaintiff is the United States of America.

2. Defendant is a resident of Grand Traverse County in the State of Michigan, where he owns and operates the Center for Health, P.C., all within the Western District of Michigan. He maintained a U.S. Drug Enforcement Administration ("DEA") controlled substance registration, No. BC6025248, which authorized him to prescribe controlled substances in his practice as an osteopathic physician.

## Recitals

3. In the Complaint, the United States alleges that Defendant violated the CSA. More specifically, the United States alleges that, from October 27, 2016, to October 27, 2021, Defendant unlawfully distributed controlled substances by writing improper opioid and other controlled substance prescriptions without a legitimate medical purpose and outside the usual course of professional practice in violation of 21 U.S.C. §§ 829 and 842(a)(1), and 21 C.F.R. § 1306.04(a); that Defendant is liable to the United States for each violation under 21 U.S.C. § 842(c)(1)(A) and 28 C.F.R. § 85.5; and that the United States is entitled to injunctive relief under 21 U.S.C. §§ 843(f), and 882(a). The conduct described in this paragraph is referred to as the "Covered Conduct."

4. This stipulated Consent Decree is neither an admission of liability by Defendant nor a concession by the United States that its claims are not well founded.

5. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement as set forth below:

## Terms and Conditions

NOW, THEREFORE, before the taking of any testimony, without the admission of any issue of fact or law, in consideration of the mutual promises, covenants, and obligations set forth below, and for good and valuable consideration as stated here, in the Parties agree as follows, and IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. The Court has jurisdiction pursuant to 21 U.S.C. §§ 842(c)(1), 843(f)(2), and 882(a), and 28 U.S.C. §§ 1331, 1345, and 1355(a).

2. Venue is appropriate in this District pursuant to 21 U.S.C. § 843(f)(2) and 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1395(a).

3. The Complaint states a claim upon which relief can be granted.

4. The Parties recognize, and the Court by entry of this Consent Decree finds, that this Consent Decree has been negotiated by the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

5. Defendant shall pay to the United States FIFTY THOUSAND DOLLARS ($50,000.00), plus interest at 1.5% per annum (the "Settlement Amount"), by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Michigan, and according to the following payment schedule (the "Schedule of Payments").

**Schedule of Payments**

|  | Payment | Principal | Interest | Balance |
|---|---|---|---|---|
| Beginning Balance |  |  |  | $50,000.00 |
| 4/1/2022 | $1,955.70 | $1,893.20 | $62.50 | $48,106.80 |
| 5/1/2022 | $1,955.70 | $1,895.56 | $60.13 | $46,211.24 |

| | | | | |
|---|---|---|---|---|
| 6/1/2022 | $1,955.70 | $1,897.93 | $57.76 | $44,313.30 |
| 7/1/2022 | $1,955.70 | $1,900.31 | $55.39 | $42,413.00 |
| 8/1/2022 | $1,955.70 | $1,902.68 | $53.02 | $40,510.32 |
| 9/1/2022 | $1,955.70 | $1,905.06 | $50.64 | $38,605.26 |
| 10/1/2022 | $1,955.70 | $1,907.44 | $48.26 | $36,697.82 |
| 11/1/2022 | $1,955.70 | $1,909.83 | $45.87 | $34,787.99 |
| 12/1/2022 | $1,955.70 | $1,912.21 | $43.48 | $32,875.78 |
| 1/1/2023 | $1,955.70 | $1,914.60 | $41.09 | $30,961.17 |
| 2/1/2023 | $1,955.70 | $1,917.00 | $38.70 | $29,044.18 |
| 3/1/2023 | $1,955.70 | $1,919.39 | $36.31 | $27,124.79 |
| 4/1/2023 | $1,955.70 | $1,921.79 | $33.91 | $25,202.99 |
| 5/1/2023 | $1,955.70 | $1,924.19 | $31.50 | $23,278.80 |
| 6/1/2023 | $1,955.70 | $1,926.60 | $29.10 | $21,352.20 |
| 7/1/2023 | $1,955.70 | $1,929.01 | $26.69 | $19,423.19 |
| 8/1/2023 | $1,955.70 | $1,931.42 | $24.28 | $17,491.77 |
| 9/1/2023 | $1,955.70 | $1,933.83 | $21.86 | $15,557.94 |
| 10/1/2023 | $1,955.70 | $1,936.25 | $19.45 | $13,621.69 |
| 11/1/2023 | $1,955.70 | $1,938.67 | $17.03 | $11,683.02 |
| 12/1/2023 | $1,955.70 | $1,941.09 | $14.60 | $9,741.93 |
| 1/1/2024 | $1,955.70 | $1,943.52 | $12.18 | $7,798.41 |
| 2/1/2024 | $1,955.70 | $1,945.95 | $9.75 | $5,852.46 |
| 3/1/2024 | $1,955.70 | $1,948.38 | $7.32 | $3,904.07 |
| 4/1/2024 | $1,955.70 | $1,950.82 | $4.88 | $1,953.26 |
| 5/1/2024 | $1,955.70 | $1,953.26 | $2.44 | $0.00 |

Interest shall accrue on the unpaid settlement amount as indicated in the Schedule of Payments. Collectively, the Settlement Amount and interest received by the United States shall be referred to as the "Settlement Payments." The Settlement Amount may be prepaid, in whole or in part, without penalty or premium.

6. Within two (2) business days of entry of this Consent Decree, Defendant shall surrender his DEA Certificate of Registration, No. BC6025248, by executing a DEA Form-104 provided by the United States and providing that executed form to the United States. Defendant understands that by executing the DEA Form-104, he

is surrendering for cause his DEA Certificate of Registration, and he is no longer authorized to order, manufacture, distribute, possess, dispense, administer, prescribe, or engage in any other activities with controlled substances or list I chemicals.

7. Defendant also agrees that he shall never apply for, or seek the renewal or reinstatement of, a registration under the CSA or the regulations promulgated thereunder, from the DEA or otherwise, whether on his own behalf or on behalf of a corporate entity. If any such applications are pending, Defendant agrees to withdraw those applications and that no additional action will need to be taken by the DEA for any such application. If, notwithstanding the provisions in this Paragraph, Defendant applies for, or seeks the renewal or reinstatement of, a registration under the CSA, and if the DEA takes any action on such an application favorable to Defendant, both Defendant's application and the DEA's action shall be a legal nullity.

8. Upon entry of this Consent Decree, Defendant is hereby permanently restrained and enjoined from directly or indirectly administering, delivering, dispensing, prescribing, or distributing any controlled substance, with the meanings of those terms as defined in 21 U.S.C. § 802.

9. Defendant's obligations under this Consent Decree shall be in addition to, and not in derogation of, all requirements imposed on him under all applicable federal, state, and local laws, including the requirements set forth in Title 21 of the United States Code and the regulations promulgated thereunder.

10. Subject to the exceptions in Paragraph 11 (concerning reserved claims) below, and subject to Paragraph 12 (concerning disclosure of assets) and Paragraph 16 (concerning default), and Defendant's compliance with the terms in Paragraphs 5, 6, 7, and 8, and upon the United States' receipt of the Settlement Amount plus interest due under Paragraph 5, the United States releases Defendant from any civil monetary claims the United States has for the Covered Conduct under the Controlled Substances Act, 21 U.S.C. §§ 801-904.

11. Notwithstanding the releases given in Paragraph 10 of this Consent Decree, or any other term of this Consent Decree, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement; and

    f. Any liability of individuals other than Defendant.

12. Defendant has provided sworn financial disclosures and supporting documents (together "Financial Disclosures") to the United States, and the United States has relied on the accuracy and completeness of those Financial Disclosures in stipulating to this Consent Decree. Defendant warrants that the Financial Disclosures are complete, accurate, and current as of the date the Parties sign the stipulated Consent Decree. If the United States learns of asset(s) in which Defendant had an interest of any kind as of the date the Parties sign the stipulated Consent Decree (including, but not limited to, promises by insurers or other third parties to satisfy Defendant's obligations under this Consent Decree) that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Defendant relating to the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $20,000.00 or more, the United States may at its option collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Defendant's previously undisclosed assets. Defendant agrees not to contest any collection action undertaken by the United States pursuant to this provision, and agrees that he will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action.

13. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered

7

Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

14. Defendant fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

15. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

16. <u>Default</u>: Defendant agrees to the following:

    a. In the event that Defendant fails to pay the Settlement Amount plus interest as provided in the payment schedule set forth in Paragraph 5 above, Defendant shall be in Default of Defendant's payment obligations ("Default"). The United States will provide Defendant a written Notice of Default, and Defendant shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to Defendant at 615 E. 8th Street, Traverse City, Michigan 49686 via overnight mail. If

Defendant fails to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of the Court's entry of a revised Consent Decree with a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount, and accompanying interest, shall become immediately due and payable.

      b.    In the event of Uncured Default, and on motion by the United States, the Court shall issue a Judgment against Defendant, and the judgment amount in the Judgment shall be calculated as the sum of $50,000.00 plus interest as provided for in this Agreement, and reduced by any payments previously received by the United States under this Agreement (totaling the "Remaining Amount"), with a ten-percent (10%) surcharge added. Defendant agrees to pay the United States all reasonable costs of collection and enforcement of this Consent Decree, including attorney's fees and expenses. In the event that the United States moves for a judgment pursuant to this paragraph, Defendant waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (a) filed by the United States against Defendant within 120 days of Uncured Default, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the date of entry of this Consent Decree.

17.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Consent Decree.

18. Each Party and signatory to this Consent Decree represents that it freely and voluntarily enters into this Consent Decree without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The exclusive venue for any dispute relating to this Consent Decree is the United States District Court for the Western District of Michigan.

20. This Consent Decree constitutes the complete agreement between the Parties. This Consent Decree may not be amended except by written consent of the Parties and order by the Court. Forbearance by the United States from pursuing any remedy or relief available to it under this Consent Decree shall not constitute a waiver of rights under this Consent Decree.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Consent Decree on behalf of the persons and entities indicated below.

22. This Consent Decree is binding on Defendant's successors, transferees, heirs, and assigns.

23. All Parties consent to the United States' disclosure of this Consent Decree, and information about this Decree, to the public.

24. The Court shall retain jurisdiction over this matter for purposes of enforcing the Consent Decree.

25. The Parties may execute this Consent Decree in counterparts.

Date: March 30, 2022     /s/ Paul L. Maloey
PAUL L. MALONEY
U.S. District Judge

The Parties hereby apply for and consent to the entry of this Consent Judgment.

**FOR THE UNITED STATES OF AMERICA**

ANDREW BYERLY BIRGE
United States Attorney

DATED: 3/29/22     BY: _____
ANDREW J. HULL
RYAN D. COBB
Assistant United States Attorneys
U.S. Attorney's Office for the
Western District of Michigan

**FOR SAMUEL P. COPELAND, D.O.**

DATED: 3-28-2022     BY: _____
SAMUEL P. COPELAND, D.O.

DATED: 3-29-22     BY: _____
CHRISTOPHER K. COOKE
Secrest Wardle
2025 East Beltline S.E.
Grand Rapids, MI 49546

*Counsel for Defendant*

12